Good morning, Mr. Erbsen. Good morning. May it please the Court, Alan Erbsen, appearing as court-appointed amicus counsel in support of reversal. The defendant's voluntary choices have jurisdictional consequences. Here, Revolution chose to exploit the Illinois market. A fair consequence is that it can be held accountable in an Illinois court. And Revolution's choices are clear from the record. There's no question of affidavits here. There's no question about disputed facts. Revolution chose to list Illinois as a destination on its shipping menu. Revolution chose to accept orders from Illinois consumers. It chose to fulfill those orders. It followed those orders up with a message thanking the Illinois consumers for their business. And it made this choice 767 times during the brief window when they were selling the product before Mr. Curry defended himself and got them to stop. There was no intermediary between the defendants and the state of Illinois. No middleman, no distributor, no one making an independent judgment. Every choice was made by the defendants and by the defendants alone. This is not a stream of commerce case. This is not a situation where the product sort of floated into Illinois on unpredictable currents. All of the defendants' contacts with the forum... Yes? Mr. Erbsohn, in your... So, in other words, in your view, if a company sets up an Internet website that solicits and accepts orders from every state and the company, in fact, shifts orders to any and every state, that company is subject to specific personal jurisdiction in every state in the same way that Sears Roebuck would have been when it sent catalogs to every state and accepted and shipped orders to each and every state. In a nutshell, that's your argument. Yes, if the suit arises from some tortious activity in connection with the sale. And the Sears Roebuck example is fantastic because Sears was shipping a wide variety of products, some of which could cause serious harm. I think you could buy a house from Sears at the time through a catalog. And if Sears had shipped a house to Illinois and that house had collapsed and injured somebody, they could not have then come to this court and said, well, we ship houses to every state. And since we ship to every state, we're immune from jurisdiction in all of them except our home state. And, in fact, one of the oddities of the defendant's position here is that they're arguing that as the sales footprint of a merchant expands, its jurisdictional footprint contracts. So the defendant's theory is that if a business in California sells a certain number of units exclusively to Illinois, then it's subject to jurisdiction. But if it sells the same amount of units to Illinois and, in addition, sells in other states, then, by virtue of those additional sales, Illinois's jurisdiction is divested. And that argument has no support in any case that I could find. And this court has expressly rejected that exact argument in HEMI. In HEMI, the cigarette distributor came to court and said, well, we sell cigarettes in every state. We don't tailor our advertising to Illinois, and as a result, we should not be subject to jurisdiction in Illinois. And the court just flatly rejected that argument. It said you can't have a defendant, a merchant, cannot have its cake and eat it too. It can't have a nationwide business model and then say that there's no nationwide exposure, that everybody who wants to sue it has to travel to its home state. And the Supreme Court, in the Burger King case, expressly said that one of the purposes that due process doctrine is serving is not just to ensure that defendants are insulated from jurisdiction when contacts are fortuitous, but to ensure that when contacts are not fortuitous, that the plaintiff has an adequate and convenient local remedy. And one of the implications of the defendant's argument here  would not be able to sue the defendant in Illinois. So under the state statutes that the plaintiff invoked, the attorney general also has enforcement authority. And every single argument that the defendants make would apply equally to the attorney general enforcing those statutes, as they do to Mr. Curry, who's acting as a private attorney general. In addition, every single argument the defendants are making would apply if instead of a trademark infringement suit, if the 767 products that the defendant had shipped into the forum had been tainted during the manufacturing process so that each of the consumers died, all of the defendants' arguments would suggest that in a wrongful death action, there's no personal jurisdiction. Well, also in a libel or defamation action, it seems to me that in Keaton v. Hustler, you have a single publication rule, and the magazine caused the harm. And Hustler's selling magazines in all 50 states, presumably, but because it caused harm in New Hampshire, no matter what the percentage of its distribution was. Yes, and that was an argument that the defendant made in the Keaton case. They said, we have a national scope, we're not targeting New Hampshire specifically, and the court held not only could New Hampshire exercise specific jurisdiction, but under the one publication rule, it could adjudicate all of the claims nationwide. We're not going that far in this case. So we have two theories of jurisdiction in this case, one involving direct sales and one involving Calder. The direct sales argument is very clean. There's no fact questions. There's no disputed legal questions. There's no need to look at affidavits. If there's no additional questions on that theory, I can turn to the Calder argument. So there's three points to make under Calder. First, Calder is still good law. No one really disputes that. My opening and reply brief outlined the argument. I don't see the defendants disputing that it is theoretically possible to state a claim under Calder in a trademark case. Second, the complaint in this case and the supporting exhibits and additional evidence that the plaintiff submitted is more than sufficient to state a claim under Calder. He said everything he needed to say to raise a Calder claim, which leads to the third point. The only real question here is whether the defendants' affidavits were sufficient to overcome all of the allegations in the complaint and all of the evidence that the plaintiff had submitted, and we would say that they were not for two reasons. First, the standard of review is extremely deferential when there's been no evidentiary hearing. The court draws all inferences in favor of the nonmoving party. It accepts all the allegations in the complaint as true, and the plaintiff need only make a prima facie showing of jurisdiction. How did the defendants attempt to overcome that? They have boilerplate affidavits, which in a very conclusory fashion simply assert the opposite of what the complaint alleges. So the genesis of the complaint is the defendants knew about Curry's ownership of the trademarks and intentionally sought to trade on his goodwill, and the affidavits, I think, can be fairly summarized as saying, no, we didn't. Well, that's an issue for trial. That's why we have a trier of fact. That's why we have summary judgment, potentially, down the road. It's not an issue that the district court can resolve in the first instance when it's supposed to be drawing all inferences in favor of the nonmoving party, particularly a pro se nonmoving party, as we had in this case. So the affidavits don't overcome the well-pleaded complaint of a Calder claim, and so that would be an independent basis for reversing the district court. If there's no questions on that, I'd like to reserve the remainder of my time for rebuttal. Thank you, Mr. Gerson. Ms. Gibson. Thank you. Good morning, and may it please the court. Counsel. My name is Amy Gibson, and I represent the defendant's appellees in this case, all four of them, Revolution Laboratories, RevLabs Management, Mr. Barry Nussbaum, and Joshua Nussbaum. We'd ask today that the district court's ruling be affirmed, because there was not personal jurisdiction over any one of the defendants in this case. Before I... Why doesn't Illinois v. Hemi Group resolve this case? Yes. Revolution's website didn't specifically exclude any state, but it seems clear that Revolution knew it was shipping its products to consumers in Illinois and thereby was knowingly and intentionally doing business with Illinois consumers. Isn't that enough under Hemi's rationale to establish personal jurisdiction over Revolution in Illinois? We don't believe that Hemi is... The reasoning in Hemi applies here for a couple of reasons. Number one, Hemi involved the online sale of cigarettes, which is a regulated product, and this court distinguished Hemi on that basis because there was no question that the action of selling cigarettes was connected to the unlawful conduct, whereas here our position is that there's no connection between the online sale of Red Series to the infringing actions. And if you look at the allegations of the complaint, you will see that they are lacking any connection to Illinois. While there are general allegations alleging that consumers in general were confused and that there were misrepresentations made, there's no connection to those misrepresentations and those consumers in Illinois. In addition, as this court noted in distinguishing Hemi and Matlin, that case involved expansive and a sophisticated venture of selling cigarettes online for a number of years, whereas here we only have evidence of sales for a short couple of months. So while certainly there were sales and we acknowledge that there were sales, there needed to be a connection to the unlawful conduct, and in addition to that, there had to have been something more beyond just the sales, some type of purposeful availment, targeting of the jurisdiction through advertising. Well, if they infringed, right? Are you arguing that doesn't arise out of? I thought you were arguing there weren't sufficient minimum contacts. That is one of our arguments. We're arguing both that there are insufficient minimum contacts, but also that the connection to this jurisdiction is insufficient as well. But if it infringed, why is it not? Why doesn't it arise from sales in Illinois? Because the allegations of the complaint focus on confusion among consumers and misrepresentations that were made, which were outright denied in the affidavits, which is a point that... You know, the online orders that Revolution received and filled, they weren't the result of unilateral action by consumers. Revolution accepted and filled orders and knowingly shipped them to Illinois and other states. In a meaningful sense, Revolution was doing business in Illinois. It shipped hundreds of orders to Illinois, accounting for 4% of its total sales over that six-month period. There were far more than de minimis sales here. It was deliberately... Revolution was deliberately availing itself of the Illinois Forum as a place to do business. Its contacts were more than sufficient, it's in my way of thinking, to subject it to personal jurisdiction in Illinois courts. And, of course, they were of an allegedly counterfeit product that infringed upon Terry's trademark rights and deceived Illinois consumers. So I don't understand your argument at all. Counsel, Ms. Herbston pointed out that under your position, the Illinois Attorney General would also not be able to enforce these statutes against your client. Do you agree? I think it depends on the particular situation and the particular claims alleged. For example, in HEMI, there were violations of state laws relating to the sale of cigarettes in Illinois. Certainly, if Revolution was selling a regulated product in Illinois that was subject to that law, perhaps it would be subject to jurisdiction. But I think here, where we have sales and there hasn't been a sufficient connection alleged in the complaint, or at least facts that have not been refuted by the affidavit, that's why this particular cause of action does not... apply for this particular claim and Revolution for this particular claim. You know, those affidavits are so conclusory. The relevant points are largely within the defendant's knowledge, making it literally almost, if not actually impossible for Terry to submit his own affidavit contesting those points. Regardless of whether or not he was, per se. I don't know how you would respond to those affidavits. Well, a couple of points on that issue, Judge. First of all, we don't believe that the affidavits are conclusory. They do state specific facts as to the lack of connection with Illinois. In addition, Mr. Curry, although pro se, he does seem to be a sophisticated enough party to have found relevant case law to support his position in the district court proceedings. With that said, had he questioned the veracity of the affidavits or believed that they lack credibility, he could have asked for an opportunity to conduct discovery on those affidavits, or he could have submitted his own affidavit. He did neither, and we believe that any request now or any argument that the affidavits lack credibility or he needs discovery on that issue is waived. He did not raise it in the lower court, so we have unrefuted affidavits, unrefuted testimony affirming that there are no direct contacts with Illinois, at least on behalf of Mr. Barry Nussbaum and Joshua Nussbaum and management. Certainly there are the sales with respect to Revolution, but beyond those sales there's no targeted marketing. There aren't any other direct communications or any other connection with Illinois. 767 sales is a significant number of sales, right? I think that's relative. I think it depends on... So the better your company does, the more products it sells nationwide, then the less chance Illinois has of having personal jurisdiction? Well, again, I think it's tied to the cause of action and the claim. So it's not just the fact that there are sales. There has to be something beyond that, including targeting in the forum, but in addition to that, that the sales arise out of the cause of action. Pardon me, the cause of action arises out of the sales, which we believe is lacking here or is refuted by the affidavits. I know I have only a short period of time left, but I do want to address jurisdiction over both Mr. Nussbaum, Joshua Nussbaum, and Barry Nussbaum and management. In accordance with the allegations of the complaint,  and for that reason, even if the court finds that there is jurisdiction over Revolution as the seller of the alleged infringing product, we don't believe that there is jurisdiction over the individuals or management as they had no connection whatsoever outside of their capacity as officers of the entities to those sales. So we would like to ask, if there are no further questions, that the court affirm the district court's order dismissing the complaint for lack of personal jurisdiction. Thank you, counsel. Thank you. Mr. Erbsen, rebuttal. Thank you. Three quick points. First, on the question as to whether HEMI is distinguishable because cigarettes are a regulated product and the product issue here is not. Illinois regulates branding. Every time one sends a product into Illinois with a deceptive label, that is a violation of Illinois law. It can be enforced privately. It can be enforced publicly. So each of these 767 sales is an independent violation. Federal law looks at likelihood of confusion, not actual confusion for every consumer. So again, each one of the 767 infringing bottles was a tort, and each of those sales is therefore related to the plaintiff's claim. Second, the counsel suggested that HEMI was a sophisticated business and Revolution is not. As noted in the brief, Revolution has $24 million a year in annual sales. It's set up as a Cook Islands Trust. This is a sophisticated entity, at least as much as HEMI was. And last, with respect to the other three defendants, this is a who-decides question. It was disputed in the district court whether the allegations against the two individual defendants and management were sufficient to assert jurisdiction. The complaint alleges that everybody was involved in the illegal decisions. There's precedent suggesting that the president and CEO of an LLC can be subject to jurisdiction based on what the LLC does. The district court declined to address those questions because it dismissed against Revolution. So now the question for this court is, if the case is going back because the district court erred in dismissing claims against Revolution, should the district court in the first instance decide whether there's jurisdiction over the other three defendants? And as noted in the reply brief, both of the doctrines that the defendants rely on, veil-piercing and the fiduciary shield doctrine, are discretionary, they're fact-dependent, and they're exactly the kinds of questions on which the district court should rule first. And to the extent there's any dispute about Illinois law, a federal appellate court under Erie should not, in the first instance, resolve contested questions of state law when there hasn't been any adjudication in the district court. So if there's no questions, we would request that the district court's decision be reversed as to Revolution and vacated with respect to the other three defendants. Thank you, Mr. Ibsen. The case is taken under advisement, and Mr. Ibsen, the court is grateful to your assistance, and thanks for accepting the appointment.